SHURLDS *et al. v.* HOLMES COUNTY *et al.*

[91 South. 563. No. 22496.]

HIGHWAYS. *Board of supervisors of road district can apply proceeds of bonds to construction of any improved public road in district.*
Where a board of supervisors issues the bonds of a road district under the provisions of chapter 207, Laws 1920, and the resolution declaring the board's intention to issue the bonds recites that they are to be issued for constructing improved public roads, the board has the right to apply the proceeds thereof to the construction of any road in the district which can be classed as an improved public road.

APPEAL from circuit court of Holmes county.
HON. S. F. DAVIS, Judge.

Mandamus by John H. Shurlds and others against Holmes County and others. Judgment of dismissal, and plaintiffs appeal. Affirmed.

*Noel, Jordan & Neilson,* for appellants.

For the purpose of obtaining a bond issue, the board of supervisors at the October, 1916, meeting, adopted chapter 173 of the Laws of 1916, under which they proceeded to obtain a bond issue of ninety thousand dollars authorized by an election reported and approved at the March, 1917, meeting. This law, thus adopted, and the bonds issued thereunder, and the necessity of repaying the same, imposes a permanent road policy as to disposition of proceeds of bonds. In the first section, page 249, Laws of 1916, authorizing the bond issue, it is provided that the bonds shall be issued, for the purpose of constructing and extending the public highways of such county or county district or supervisor's district or special road district, to connect with the improved highways of adjoining counties, county districts, supervisor's districts, or special road districts, out of the proceeds of bond issues, so as to form a complete system of inter-county, inter-district, or interstate improved highways.

From this provision it is clear that the proceeds of bond issues should be applied on a through system of improved highways, part of a complete system, and not to laterals, spurs, or neighborhood roads. The concluding paragraph of this section, on page 251, especially provides that this act shall not interfere with the right of any county or road district to levy taxes for the upkeep and maintenance of any public road or improved highway, thus showing the distinction drawn between the bond issues for the construction of interstate and inter-district highways and all other road purposes.

The title of the act states that it authorizes bond issues so as to form a continuous system of improved interstate, inter-county and inter-district highways. This purpose

controls the construction of the act; our constitution requiring that the purpose of every act shall be embodied in its title, thus making the title a very important part of the act itself, in the matter of its construction.

This continuous system of highways, which was embodied into the road district No. 4, under the Laws of 1916, chapter 173, which it adopted and which it cannot change, being a vested right in the bondholders until the bonds are paid, controls the purpose for which proceeds of bond issues may be applied, that is, to continuous road systems.

The Laws of 1920, chapter 207, repeals nothing that is not in conflict with its provisions regulating the details of bond issues, and therefore does not repeal nor modify the provisions of the Laws of 1916, chapter 173, requiring proceeds of bond issues to be used for continuous improved highways, instead of lateral or neighborhood roads, and the law does govern the purpose for which the proceeds of bond issues may be used, and conferred on the board of supervisors a duty which the right of mandamus should enforce.  The petition for mandamus alleges, and the demurrer admits, that the bonds were issued by the board for the purpose of completing the improved highway, including the two and one-fourth miles of unfurnished road, and that they propose to divert the whole of the proceeds of the bonds to the improvement of neighborhood roads, for the benefit of plantations in which they are interested, and neither the supervisors, nor others holding a position of trust, can exercise their power for personal advantage, as is here charged and, by the demurrer, admitted.

The petition does allege that the board of supervisors was requested to use the bonds for the improved continuous highway, instead of for the laterals.  Even if it did not, however, mandamus lies to require officers to perform ministerial details regardless of preceding request.

Our Code and sheet acts confer no authority upon boards of supervisors to let public contracts according to their whim, or to purchase roads or bridges which have already

been constructed, but require such outlays to be made after publication and on competitive bids. Section 301, Code of Mississippi, 1906, section 3734, Hemingway's Code, and cases there cited.

In this case, according to the admitted allegations of the petition, the purchaser of the bonds was one of the road commissioners, and retained seventeen thousand two hundred and fifty dollars of the proceeds of the bonds for the purpose of completing and graveling an improved private road through a plantation in which he was interested, and without any advertising or publication or public bidding for the work represented by said seventeen thousand two hundred and fifty dollars; and the other proposed roads are chiefly for the benefit of the owners of the plantations, Omega, Bailey and Pluto, who are the supervisors and road commissioners. All of these transactions fall directly under the inhibition of section 109 of the Constitution, which declares no public officer or member of the legislature shall be interested, directly or indirectly, in any contract with the state, or any district, county, city or town, authorized by any law passed, or order made by any board of which he may have been a member during the term for which he shall have been chosen, or within one year after the expiration of such term. This same principle is carried into section 138, Hemingway's Code, Section 1205, Code of Mississippi, 1906, making such action by any board, or officer, a criminal offense.

Therefore, if the board illegally authorized payment of the seventeen thousand two hundred and fifty dollars or proposes to appropriate money for the benefit of property in which one of their members, or the highway commissioners, is interested, then such act is contrary to our Constitution, and penal statutes, and is utterly void and mandamus should lie to compel correct and legal action and disregard their own void proceedings.

In conclusion, we respectfully urge that this is not a case where it is sought to control by mandamus an act

which is discretionary on the part of the board of supervisors. and road commissioners, but on the contrary, is a case where funds have come into the hands of such representatives of the county for a purpose prescribed by statute, and which funds are being diverted to other than the statutory purposes, and we respectfully urge that the authorities heretofore cited clearly establish the right of appellants to the writ of mandamus to prevent such acts, and to compel the application of the funds, to the purpose for which they were raised; and therefore, this cause should be reversed.

*Boothe & Pepper* and *G. H. McMorrough,* for appellee.

Where a discretion is left in an inferior tribunal (as with the board of supervisors in this case under section 170 of the Constitution of 1890, giving it full jurisdiction over roads, bridges, ferries, etc.) the writ of mandamus can only compel it to act but cannot control the discretion to be exercised. *Madison County* v. *Alexander,* Walker 523; *Attalla County* v. *Grant,* 9 S. & M. 77; *Swan* v. *Gray,* 44 Miss. 393; *Vicksburg* v. *Wainwater,* 47 Miss. 547; *Clayton* v. *Williams,* 49 Miss. 311; *Board of Education* v. *West Point,* 50 Miss. 638; *Monroe County* v. *State,* 63 Miss. 135; *Hardee* v. *Biggs,* 50 Miss. 802; *Hoskins* v. *Scott County,* 51 Miss. 406; *Cole, Insurance Commissioner,* v. *State,* 91 Miss. 628.

The petition should present a *prima-facie* right on the part of the relators, and of the duty and obligation to perform the act demanded on the part of the defendant. It should be verified by affidavit. It should also appear that demand has been made and a refusal or neglect to comply and that the relator had a legal right to make the demand, and have same complied with, otherwise the petition should be dismissed. *Hardee* v. *Gibbs,* 50 Miss. 802, and authorities above-cited; *Haskins* v. *Scott County,* 51 Miss. 406; *Shotwell* v. *Covington,* 59 Miss. 735; *Young* v. *Leflore County,* 89 Miss. 456; *McHenry* v. *State,* 91 Miss. 562; *Wright* v. *Edwards, etc.,* 101 Miss. 474; *Roberson* v. *Atawamba County,* 105 Miss. 90.

Under Code of 1906, section 3231, Road Commissioners are not entitled to mandamus to compel county board of supervisors to issue and sell bonds for the construction of a road in a supervisor's district, under the provisions of Laws of 1910, chapter 149, authorizing construction of such road, since Code 1906, section 80, provides for an appeal from the decision of board of supervisors to the circuit court. *Roberson* v. *Itawamba County,* 105 Miss. 90. Highway Commissioners or taxpayers cannot sue the county for bond money for road used in the construction of bridges, although chapter 176, of the Laws of 1914, provide that such bridges shall be paid for by the county out of the bridge or general county fund, and not out of the bonds sold for improving public roads, under provision of said act. *Shell* v. *Monroe County,* 88 So. 162.

The petition in this suit clearly shows and sets forth an attempt on part of petitioners to control the judgment and discretion of the board of supervisors, in the selection and improving and acquiring rights of way therefor and in building bridges thereon of a certain highway instead of three other highways selected, designated, and surveyed, and plans made therefor, and contracts let for said improvements, and therefore falls under the condemnation of that long line of decisions upholding the judgment and discretion of the board of supervisors and its constitutional jurisdiction in such matters.

There has been a feeble attempt on part of petitioners to show that the sixty thousand dollar bond issue is in someway or in somewise connected with chapter 173, of the Laws of 1916, under which bond law the original ninety thousand dollar bonds were issued, sold, and spent. That law is, or rather, was, simply a bond law, not a road law, and the same was so drawn by one of the attorneys for appellees, who is the father of the act, and our court has so construed the same in case of *DeSoto County* v. *Dean,* 120 Miss. 334. Special Road District No. 4 of Holmes county was organized under the provisions of chapter 174 of the Laws of 1912 (record page 10, *et seq.*) by board of super-

visors, August Term, 1914, and has been operating there-under from that good day down to the present moment.

Thereafter the passage of chapter 207 of the Laws of 1920, all other laws and parts of laws in reference to is-suance of road bonds which differ or conflict with the pro-visions of chapter 207 as to the issuance of road bonds, were repealed, and are of no effect, since the passage of said act, as the same was the last expression of the legis-lature on the subject and has since occupied and regulated the entire field of issuance of bonds for road and other purposes therein enumerated, as construed by this court in *Rosenstock* v. *Board of Supervisors Washington Co.,* 85 So. 91; *Jones A. H. S.* v. *Leflore County,* 85 So. 195; *Wright* v. *Board of Supervisors, Lauderdale Co.,* 86 So. 643.

And to make the holding of the court still clearer in the most recent case from Hinds county, this court says: "Chapter 207, Laws of 1920, approved April 2, 1920, deals with the entire subject of the authority of counties, etc., to issue bonds and the method to be pursued by them in so doing and expressly repeals all statutes and parts thereof in conflict therewith. *Bacot* v. *Board of supervisors Hinds County,* 86 So. 765.

These bonds were intended for the purpose designated in original resolution, that is for the purpose of construct-ing improved public roads and for providing the rights of way therefor and the construction of bridges on public roads in supervisor's district No. 4, being road district No. 4, Holmes county, Miss., and there is no power under the law for any person, body of persons, or other authority to select, designate, and lay out the roads, rights of way and bridges to be improved, purchased and built other than the board of supervisors of Holmes county; even the road commissioners of the district can only act in an advisory capacity to the board, and the board can accept or refuse their advice as it sees fit. The public roads of said district are under the provisions of chapter 174, of the Laws of 1914, and in section 12 thereof, the act is made constitu-

tional by inserting this provision. Chapter 174, Laws of 1914, section 12.

The legislature in 1916, by chapter 169, thereof, attempted to so amend chapter 174 of the Laws of 1914, above referred to (and under which road district No. 4 of Holmes county is now organized and operated), that the board of supervisors would be deprived of its constitutional authority, and a test case went up from Bolivar county attacking the constitutionality of chapter 169 of the Laws of 1916, and Chief Justice SMITH in affirming the lower court declaring the act unconstitutional, states: "Chapter 169 of the Laws of 1916, does not regulate the manner in which the jurisdiction of boards of supervisors over roads, ferries and bridges, shall be exercised, but attempts to provide a method by which practically all jurisdiction over the same may be withdrawn from such boards and vested in road commissioners, and this legislature, because of the provisions of section 170, of the Constitution is without power to do. The statute is therefore void and the court below committed no error in declining to enforce its provisions." *State ex rel. Salter* v. *Board of Supervisors, Bolivar County,* 72 So. 700.

The board of supervisors of Holmes county by and with advice and recommendation of road commissioners of the district, selected certain roads in the district to be improved rights of way to be acquired and bridges built, as shown by report of committee of the board, made exhibit to the petition, and they have the power to change or alter even their plans, and by the exercise of their discretion to select other roads, rights of way and bridges to be improved purchased and built, at any time before the contracts are actually let, for they are only required to use the proceeds of bond issue for the purpose of constructing improved public roads and providing the right of way therefor, and construction of bridges on public roads in supervisors district No. 4, being special road district No. 4, of Holmes county, Mississippi. The only obligation the board is under is that the proceeds of the bonds shall

be used for above purposes in road district No. 4. They would have no right to use the proceeds of the bond issue for working the roads of the district generally or as a whole, but must select certain roads to be improved and made better than the ordinary public roads of the district, which they did and are continuing to do, each road to be improved having been carefully selected, surveyed, plans and specifications furnished therefor, and contract let as provided by law. Section 4, chapter 207 of Laws of 1920. *Love* v. *Board of Supervisors of Yazoo County,* 72 So. 230. The court will take judicial notice of the fact that in the selection of roads to be specially improved from bond issues, all residents and property-owners in the district cannot reap the same benefit in the same proportion, that some will naturally be benefitted more than others, yet nevertheless such matters are necessarily left to the sound discretion and judgment of the boards of supervisors under the constitutional and statutory provisions of our laws governing the establishment, working and maintenance of public roads, and acquiring rights of way therefor and the building of bridges thereon. If such was not the law, hopeless confusion and chaotic condition would soon take place of the present orderly exercise of discretion and power over such matters now vested in the boards of supervisors throughout the state. If every dissatisfied person in matters of establishment of improved public roads and acquiring right of way therefor and of building bridges thereon, could, by petition in mandamus and writ issued therein, alter or change the plans, decisions and judgments and discretions of the boards of supervisors in such matters, it would be practically impossible to build improved roads, and this fact, the fathers of our Constitution must have had in mind when they adopted and made section 170 a part of the organic law of the state of Mississippi. We have carefully examined and compared the original and amended petitions in this cause, to which we interposed demurrers, and which were promptly sustained by the circuit court, and from

which action the relators have appealed to this court, and we are unable to see any material difference in the two petitions and the exhibits thereto, we therefore most respectfully state and contend with much confidence that the court below in sustaining the demurrer to both petitions followed the law as laid down in that long line of decisions of this court holding that the board of supervisors acted according to their judgment and discretion, and within their constitutional and statutory power in the matter of selecting public roads to be improved, rights of way acquired and bridges built, which are involved and complained of by petitioners in this case.

We therefore most respectfully pray that the action of the court below in sustaining demurrers to the original and amended petitions and in dismissing the petitions, be affirmed, and that the board of supervisors of Holmes county be permitted to carry out its orders and contracts in the construction of the improved highways as shown by the record in this case.

*G. H. McMurrough,* for appellee.

I wish to mention some of the authorities relied upon by appellants herein. The case of *De Soto County* v. *Dean,* 120 Miss. 334, is not in point here at all. That case was where the board had, themselves, put in motion the machinery for issuing the bonds which were fully described, etc. Had already called the election and the election had resulted for the bonds, and for some reason the board failed and refused to take the clerical and ministerial steps for completing the work whereupon mandamus was sought against them compelling them to complete this ministerial work. The circuit court in the exercise of his discretion which the law clothes him with in such cases after hearing the matter and being fully advised, directed mandamus, and the supreme court refused to disturb his discretion. However the supreme court in that case did hold that the board of supervisors there could follow their

own methods and procedure in establishing road districts.
The board of supervisors were free to follow their own
procedure, but could decided for themselves whether or not
to issue any bonds, i. e., they could have refused to issue
bonds in the beginning unless the statute was mandatory
and clear out.

The case of *Clark* v. *Loper, Trustee, et al.,* 117 Miss. 234,
was where mandamus was granted to compel the trustee
of a school to admit pupils of the district, and to which no
legal objections had been urged.    School trustees have
never been considered anything other than ministerial offi-
cers, and have no judicial duties, especially in deciding
whom the law permits to attend school, etc.    And it was
held that mandamus was one method by which they could
be compelled to act.    They could of course in any event be
compelled to act, and as the records did not show any
legal reason for excluding the children from the public
school no other action but to admit them could be taken
by them.

The case of *Bookout, et al., v. Board of Supervisors, Ita-
wamba County,* 103 Miss. 413, cited by appellants was a
case wherein Bookout sought to mandamus the supervisors
of Itawamba county to compel the board to treat a cer-
tain district as a road district and to issue bonds of said
district for road purposes as set forth in the laws under
which they were attempting to organize; the circuit court
refused mandamus and was affirmed therein by the su-
preme court, thus strengthening the well-known doctrine
that the boards cannot be controlled by mandamus in
handling of bond issues for roads.

The following cases cited by appellants have no applica-
tion here.    They are only cases dealing with powers and
duties of school trustees, viz:   *Hobbs* v. *German,* 94 Miss.
460; *Moreau* v. *Grandich,* 114 Miss. 560; *Clark* v. *Board
of Trustees,* 117 Miss. 234.

The case of *De Soto County* v. *Dean,* 120 Miss. 334, so
much relied upon by appellants throughout their brief,
also calls into its construction chapter 214, Laws of 1918.

The record of the case at bar does not involve or call into construction this latter chapter at all. Petitioners did not rely upon it in its petitions at all.

While the Constitution gives the boards of supervisors full authority over roads, ferries and bridges, we do not claim they can control same untrammeled by the law, but we do claim that they cannot be controlled in their actions in any particular direction where the laws lays down general jurisdiction; where the law gives them authority to do a certain thing, they have a right to pursue the methods as seems best in their sound judgment or discretion. This is upheld in many cases, as I will show later.

The many cases cited by appellants passing on the validity of the bond issue, are not applicable here, there is no disagreement as to the legality of the bonds and validity of the Laws of 1917, providing for the validation of all bond issues, etc. The principal disagreement is as to power of the boards of supervisors in determining what roads they shall select and maintain, or what particular roads in their judgment best subserve the general interest of the public, and their discretion in selections of public roads in a county or district.

The mode of the original construction of the highway is one intrusted to the discretion of the officers, and therefore they cannot be coerced by mandamus, and though they have entered into a contract with adjacent landowners to construct the road in a particular manner, the general rule that mandamus will not lie to compel the officer to construct in accordance with their contract. The power of municipalities to vacate streets or parkways as the public interest may require in pursuance of the legislative and administrative authority conferred on them, cannot, it has been held, be limited by contract with individuals, and the exercise involves judgments and discretion as regards the demands of public interest.. Mandamus will not lie to compel the municipal authorities after they have determined to vacate a street, or parkway or other public grounds to resume the maintenance and judgment thereof,

as the determination of the public interest requires such
vacation is conclusive upon the court in such proceedings.
17 R. C. L. 240; 20 Ann. Cas. 848.

In England it has been held that mandamus will not lie
to compel the repair of the highway. 16 E. R. C. 780. Be-
fore a writ of mandamus will issue, it must be shown that
the party sought to be commanded has funds on hand, or
under his control with which to make repairs. 20 Ann.
Cas., page 849; 21 Ency. Stand. Proc., pages 123-262.
Mandamus does not lie to review action already taken. 19
Ency. Stand. Proc., page 167.

The board of supervisors in laying off public roads and
determining whether or not same are for the best interest
of the public, as to whether or not establishing, building
and maintaining the public road is for the best interest of
the public and what direction and location will be for the
best interest of the public have the discretion and therefore
acting in a judicial and *quasi*-judicial capacity and not in
a mere ministerial capacity appointed its committee mak-
ing report after having fixed the proposed road making
their report to the board and by them as a whole passed
upon the committee report and decided as to whether or
not to establish a road, etc., and certainly have the dis-
cretion as to what action they will take in establishing and
building the road as cited in section 7080, *et seq.,* Heming-
way's Mississippi Code.  In fact the court lays down
methods of procedure if any one is dissatisfied with the
proceedings, and they should appeal to the circuit court
in the method provided by law.  We might admit for the
sake of argument that should the board of supervisors es-
tablish the road and afterwards refuse to do some mere
clerical or ministerial act, a mandamus might lie if per-
mitted by the particular suit in which said writ was al-
lowed.  However the Dean case, so much relied upon by ap-
pellants, did not go that far in its holding.

Our contention in this matter is that in so far as the
sixty thousand dollars bond issue is concerned, the board
were not committed or tied to the use of the proceeds of

the said bond issue in the manner claimed by petitioners. Mandamus will not lie to control the action of the trustees of the police pension fund in respect to claim where statute makes the decision of the board final. *Board of Trustees* v. *McCrory,* 21 L. R. A. (N. S.) 583; *State ex rel. Lynch* v. *Fireman's Pension Fund,* 42 S. R. 506 (La).

. The writ of mandamus will not issue unless a clear legal right to relief is shown. Nor will mandamus issue when the relator has any other legal remedy. 16 Ann. Cases; *State, ex rel. Marshall* v. *District, et al.,* Ann. Cas. 1917C, page 144 (Mont.) ; *U. S.* v. *Black,* 32 L. Ed. 354; *Robertson, et al.* v. *Board of Atawamba Co.,* 105 Miss. 90; *Board of Police* v. *Grant,* 9 S. & M. 75.

In the case at bar, the board of supervisors certainly have the right and discretion to select certain public roads to be worked and maintained, and petitioners (appellants) did not raise any question as to the public roads to be worked and for which contracts were advertised, bids had been properly selected, and established in the past. In fact they admit and reiterate the legality and validity of the proceedings by the board in the past in locating and establishing these various public roads, and the bond issue having been made upon the notices and publications and proceeds as shown by the record to be merely for public roads, bridges on roads and rights of way to build roads in District No. 4. The board had the privilege, power and full discretion to say which roads. *Swan* v. *Buck,* 40 Miss. 268; *Bibb* v. *Gaston,* 40 So. (Ala.) 937; Am. & Eng. Encl. L. (2 Ed.), page 75; 18 R. C. L., page 137; 30 Ann. Cas. page 369; 18 R. C. L. page 137; 3 S. & M. 695; *Clayton* v. *McWilliams,* 49 Miss. 311; *Swan* v. *Buck,* 40 Miss. 268; *Effingham et al.* v. *Hamilton,* 68 Miss. 523; *State ex rel. Pierce* v. *Stout Institute,* 158 Wis. 417; *Ex parte Manheim Twp.,* 5 Clark (Pa.) 400; A. L. R. 1, page 1559, (note) ; *State ex rel. School District* v. *Cary,* A. L. R. 1, 1559 (note).

We submit that appellants have shown no reason for the reversal of their defeat in the circuit court in their

petition for mandamus, and we submit that this case should be affirmed, and confidently believe it will be.

SMITH, C. J., delivered the opinion of the court.

This is a proceeding in which the appellants, who were petitioners in the court below, seek a writ of mandamus directing the board of supervisors of Holmes county to appropriate the proceeds of certain bonds of a road district issued under the provisions of chapter 207, Laws of 1920, to the completion of a particular intercounty highway, partly constructed through the district with the proceeds of a former issue of its bonds, issued and sold under the provisions of chapter 173, Laws of 1916. The petition for the mandamus was demurred to, the demurrer sustained, and the cause dismissed, and the petitioners appealed to this court.

The authority vested in boards of supervisors by chapter 207, Laws of 1920, to issue the bonds of a road district is—"for the purpose of constructing improved public roads and providing for the right of way therefor and the construction of bridges on public roads." Section 1.

Section 2 of the statutes provides that—"Before issuing said bonds, the board of supervisors shall, by resolution, spread upon its minutes, declare its intention of issuing said bonds fixing the maximum amount thereof, and the purpose for which they are to be issued."

Section 4 provides that—"The proceeds of any bonds issued under the authority of this act shall be placed in the county treasury or district or county depository as a special fund and shall be used for no other purpose than the purpose set forth in the original resolution of the board of supervisors."

The board of supervisors complied with the statute in issuing the bonds here in question by adopting a resolution before issuing them setting forth:

"Whereas the board of supervisors of Holmes county, Mississippi, are of the opinion that additional bonds should

be issued and sold for the purpose of constructing improved public roads and providing the right of way therefor, and the construction of bridges on public roads in said supervisor's district No. 4, which is also special road district No. 4, in Holmes county, Mississippi, in accordance with the provisions of chapter 207, of the Laws of 1920 of Mississippi: Therefore, be it resolved, that this board hereby declares its intention of issuing sixty thousand dollars of public road bonds of said district for the purpose of completing and constructing improved public roads and providing the right of way therefor and the construction of bridges on public roads in said separate road district No. 4, of Holmes county, Mississippi."

The purpose for which the bonds were issued, as appears from this resolution, being, not for the construction of any particular road, but for "constructing improved public roads," the board of supervisors have the right to apply the proceeds thereof to the construction of any road in the district, which can be classed as an improved public road.

*Affirmed.*